IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KEVIN VESTER and RAY SHAWN VINSON III, | ) ) ) |
| Plaintiffs, | ) ) ) |
| vs. | ) ) |
| BENJAMIN S. CARSON, SR., IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT; AND UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

No. _____

## COMPLAINT

1. This is an action under the Administrative Procedures Act, 5 U.S.C. §§ 701 *et seq.* ("APA") to review final action by the United States Department of Housing and Urban Development ("HUD" or the "Agency"), debarring Plaintiffs Kevin Vester and Ray Shawn Vinson III (together, "Plaintiffs") from participating in procurement or nonprocurement transactions with the federal government for three years.

2. HUD's action was arbitrary and capricious and its procedures violated Plaintiffs' right to due process of law.  Accordingly, Plaintiffs seek declaratory and other appropriate relief against HUD and Benjamin S. Carson, Sr., in his official capacity as Secretary of HUD.

## PARTIES

3. Plaintiff Kevin Vester is a citizen of Missouri who resides at 33 Mountain Laurel, St. Peters, Missouri 63376.

4. Plaintiff Ray Shawn Vinson III is a citizen of Missouri who resides at 809 Wellesley Place Drive, Chesterfield, Missouri, 63017.

5.     HUD is an agency of the United States government with its headquarters at 451 7th Street S.W., Washington, D.C. 20410.

6.     Benjamin S. Carson, Sr. is the Secretary of HUD.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which provides district courts with original jurisdiction over all civil actions arising under the laws of the United States. This action arises under the APA, 5 U.S.C. § 701 *et seq.* and the Due Process clause of the Fifth Amendment of the United States Constitution. This Court is authorized to enter a declaratory judgment under 28 U.S.C. § 2201 and 5 U.S.C. § 706 and to grant injunctive relief under 28 U.S.C. § 2202 and 5 U.S.C. § 705.

8.     Venue is proper in this Court under 28 U.S.C. § 1391(e), which provides that a civil action in which a defendant is an officer or agency of the United States may be brought in any judicial district in which the plaintiff resides. Plaintiffs reside here.

## FACTUAL BACKGROUND

9.     Plaintiffs are co-owners of Vinson Mortgage Services, Inc. ("Vinson Mortgage"). Vinson Mortgage's president is Plaintiff Vinson; its vice president is Plaintiff Vester. Vinson Mortgage was founded in 2006 and Plaintiffs became Vinson Mortgage's co-owners in 2014.

10.    Vinson Mortgage originates FHA-mortgage loans, which enable borrowers who do not qualify for traditional mortgage financing to obtain home loans. As owners of Vinson Mortgage, a FHA mortgage company, Plaintiffs are required to maintain certain licenses and registrations with HUD that allow Plaintiffs to contract with the federal government.

11.    Vinson Mortgage currently employs approximately 65 people in the offices it maintains throughout the Midwest.

12. On February 28, 2017, HUD sent to Mr. Vinson and Mr. Vester notices of proposed debarment, indicating that the Agency was proposing a three-year debarment that would prevent Mr. Vinson and Mr. Vester from participating "in procurement and nonprocurement transactions . . . throughout the Executive Branch of the Federal Government."

13. In its notice of proposed debarment to each Plaintiff, HUD asserted that the proposed debarment action was based upon:

> a. Your participation in VMS' submission to HUD of a management's response to a finding of noncompliance with HUD's Adjusted Net Worth requirement at December 31, 2013, that contained errors or false information; and
>
> b. Your participation in VMS' submission of audited financial statements that contained errors or false information to HUD's Mortgagee Review Board for its fiscal year ended December 31, 2014.

14. The notice of proposed debarment referenced Vinson Mortgage's annual obligation to submit an independently audited financial statement. Among other things, the statement must verify that the mortgagee satisfies HUD's regulatory requirements for FHA providers, including, *e.g.*, net-worth thresholds.

15. More specifically, as explained in notices of violation, the Agency took issue with the way in which Vinson Mortgage represented the company's net worth. Vinson Mortgage did so in accordance with generally accepted accounting principles ("GAAP"), when Plaintiffs took out a Small Business Administration ("SBA") loan and utilized the proceeds of the loan to make a capital contribution to the company. The Agency maintained that the SBA loan was a liability and not a capital contribution because the loan listed both Plaintiffs and their company, Vinson Mortgage, as co-obligors. But the co-obligors to this SBA loan agreed amongst themselves, in writing, that the responsibility for repaying the loan would fall on Plaintiffs as individuals and not on the company.

3

ASC 405, a standard of GAAP, thus allows the company to list Plaintiffs' capital infusions into the company as capital contributions and not as a liability to the company for accounting purposes.

16. Plaintiffs maintained, as supported by their accountants and auditors (including independent audits by HUD-approved auditor, Mueller Post) that they accurately represented the company's net worth in Vinson Mortgage's annual submissions to the Agency.

17. On March 27, 2017, Plaintiffs responded through counsel to the proposed debarment notices, expressly disputing their allegations and requesting an informal meeting to resolve the issues. Plaintiffs specifically explained the GAAP standards that supported their representation of the SBA loan as an asset to the company.

18. Plaintiffs' March 27, 2017 response further requested that "a formal hearing be scheduled" if the matter could not be resolved informally. Plaintiffs also requested that the respective debarment actions against Mr. Vester and against Mr. Vinson be consolidated.

19. Furthermore, Plaintiffs' March 27, 2017 response noted that Plaintiffs' company, Vinson Mortgage, was "currently before an administrative law judge regarding some of these same issues." Indeed, HUD issued its notices of proposed debarment in the weeks leading up to Vinson Mortgage's hearing before an administrative law judge ("ALJ") in a parallel action against Plaintiffs' company (the "Withdrawal Action"). Vinson Mortgage is challenging the Withdrawal Action in a related APA case pending before this Court, Case No. 4:18-cv-0079.

20. The Withdrawal Action against Vinson Mortgage had been pending since May 2015 and was set for hearing before a HUD ALJ beginning March 21, 2017. HUD's notices of proposed debarment against Plaintiffs were issued three weeks before the ALJ hearing in the Withdrawal Action. Plaintiffs' March 27, 2017 response to the proposed debarment was required while the ALJ hearing was ongoing.

21. While the Withdrawal Action was still pending (at this point, before the Secretary after Vinson Mortgage appealed the ALJ decision for secretarial review), on October 5, 2017, Plaintiffs filed a written request for a full evidentiary hearing on the proposed debarment, in place of an informal hearing that was scheduled for October 10, 2017. Plaintiffs' request specified that they wanted an evidentiary hearing because of the fact-intensive nature of the issues involved.

22. On October 6, 2017, the Agency opposed the request for an evidentiary hearing, curiously stating that any factual issues were not material while also stating that the "fundamental question of this debarment is whether Respondents' assertions in the FY 2014 Audit and in the Second FY 2013 are false." Plaintiffs' position was that the statements were true; the Agency contended the statements were false. Not only this, but the Agency contended the statements were *intentionally* false, which Plaintiffs deny, creating another factual dispute. Thus, the parties disputed the central, factual issues that the Agency recognized as the "fundamental question" in the debarment action.

23. A case administrator for the Agency responded in an email on October 10, 2017, the morning of the scheduled informal hearing, which was to take place via teleconference. While the October 10 email from HUD indicated that the informal telephone conference would proceed that afternoon as planned, it did not include a decision in response to Plaintiffs' request for an evidentiary hearing.

24. Later that afternoon, on October 10, 2017, Plaintiffs and the Agency participated in an informal, telephonic hearing before Mortimer F. Coward, the designee of HUD's debarring official.

25. At the informal hearing on the afternoon of October 10, 2017, Plaintiffs again raised their request for an evidentiary hearing, and Mr. Coward did not provide a decision.

5

26. The informal, telephonic hearing on October 10, 2017 was not recorded, transcribed, or reported; there was no record created at the hearing before Mr. Coward, the debarring official's designee.

27. At the informal hearing, no evidence was put on by either party, no witnesses were called, and therefore no cross-examination took place.

28. While the debarment action was pending, on October 1, 2017, the Secretary designee extended by two months its own time to issue a written decision in the Withdrawal Action against Vinson Mortgage "because of the seriousness and the complexity of the issues presented in this case." On January 9, 2018, the Secretary designee denied Vinson Mortgage's appeal, finalizing the Withdrawal Action against the company owned and operated by Plaintiffs.

29. On January 18, 2018, Vinson Mortgage filed an action in this Court seeking judicial review of the Withdrawal Action. *See* Case No. 4:16-cv-0079. On January 26, 2018, this Court entered a stay order, providing that Vinson Mortgage "may participate in the Federal Housing Administrative Title II program consistent with the terms of its original approval, including but not limited to loan underwriting, origination, and FHA insurance endorsement, pending entry of a final judgment in this action."

30. While judicial review of the Withdrawal Action was pending in this court, and after this Court entered the January 26, 2018 stay order preserving the parties' relative positions pending judicial review of the Withdrawal Action, the Agency issued the Debarring Official's Determination (the "Debarment Order") on March 13, 2018, debarring Plaintiffs from contracting with the executive branch of the federal government for three years. The Debarment Order was served on Plaintiffs on March 19, 2018.

31. The March 13, 2018 Debarment Order was not issued by Mr. Coward, who presided over the informal telephonic hearing, but rather by Craig T. Clemmensen, HUD's Debarring

6

Official.  Mr. Clemmensen was not involved in any prior portion of the debarment proceeding, nor was he present for the hearing on October 10, 2017 before Mr. Coward.  Because no record was created of the telephonic hearing, Mr. Clemmensen did not and could not review a record of this hearing while making the deliberations that led to the Debarment Order.

32. HUD's website lists Mr. Clemmensen as the Agency's "Director of the Departmental Enforcement Center."  This makes him a key enforcement official.  In that capacity, on information and belief, Mr. Clemmensen would have overseen the Agency's prosecution of the Withdrawal Action against Vinson Mortgage Services.  By serving as the prosecutor and judge in the same matter, Mr. Clemmensen's role as the decision maker for the debarment action violates Plaintiffs' due process rights.

33. On information and belief, Mr. Clemmensen's intervention in the debarment proceedings occurred in bad faith in order to obtain the outcome the Agency wanted, without regard to the facts or legal standards required to issue a three-year debarment sanction.

34. On its face, the Debarment Order recognizes that it is based on the same factual disputes as were at issue in the Withdrawal Action.  The Debarment Order itself and the Agency's briefing in the debarment action underscore that the only material difference between the Withdrawal Action and the debarment action were the identities of the respondents:  The Withdrawal Action proceeded against Vinson Mortgage, and the debarment action was against Plaintiffs, the individual owners and operators of Vinson Mortgage.

35. In a March 23, 2018 email to Vinson Mortgage's (who are now also Plaintiffs') counsel, the Agency represented that the Debarment Order "was effective immediately and precludes Mr. Vester and Mr. Vinson from participating in any federal program throughout the Executive Branch, including the FHA program, for three years, . . . unaffected by the stay that HUD agreed to regarding the withdrawal of Vinson Mortgage Services' FHA approval . . . so long as Mr.

7

Vinson or Mr. Vester retains either an ownership interest of or employment with Vinson Mortgage Services." Otherwise, the Agency contended, Vinson Mortgage would be subject to "suspension . . . and the imposition of a civil monetary penalty for each day the mortgagee has a debarred employee or owner."

36. The Debarment Order creates severe reputational harms as debarments are publicly listed by HUD and the federal government and are readily ascertainable by Plaintiffs' and Vinson Mortgage's corporate partners. The debarments must also be disclosed to Vinson Mortgage's investors.

37. After the Debarment Order issued, Vinson Mortgage requested that the Agency either (1) recognize that the debarment must not take effect per the stay order issued by this Court in its judicial review of the Withdrawal Action, or (2) voluntarily stay the debarment pending this Court's judicial review of the Withdrawal Action, which (as the Agency has recognized in the debarment action) involves the same factual disputes as the debarment action. The Agency declined and has maintained that the Debarment Order has taken immediate effect against Plaintiffs. Plaintiffs also requested that the Agency stay enforcement of the debarments pending judicial review. Again, HUD declined.

38. Like the Withdrawal Action pending before this Court's review in a related case, the Debarment Order threatens Vinson Mortgage's survival and will divest Plaintiffs of the company they have developed for years. This, in turn, will hurt the communities served by Plaintiffs through Vinson Mortgage, including FHA borrowers who would not otherwise qualify for traditional mortgage services because, *e.g.*, they have low income, poor credit ratings, or insufficient funds to make a down payment, to obtain financing for a home. Roughly half of Vinson Mortgage loans are FHA loans. This accounts for a significant portion of Vinson Mortgage's business.

39. HUD's decision violates the APA in a number of material respects.

40. First, HUD did not provide Plaintiffs with any meaningful opportunity to be heard by a neutral arbiter who would decide the debarment issue. This is because Plaintiffs were never afforded a formal hearing despite the fact that the parties disagreed on fundamental factual issues. Furthermore, the informal, telephonic hearing was not recorded and was not before Mr. Clemmensen, who made the ultimate decision as to whether to debar Plaintiffs. The hearing procedures violated the regulations governing fact-finding hearings in debarment proceedings because it was not recorded and Plaintiffs were not afforded the opportunity to present witnesses, offer evidence, or cross-examine HUD's evidence. That Mr. Clemmensen is the Agency's chief enforcement officer, and therefore would have overseen the Withdrawal Action, compounds the due process problem because it means that he served as both prosecutor and judge in the same matter.

41. Second, HUD failed to address key arguments made by Plaintiffs, including those related to ASC 405, that would mitigate Plaintiffs' liability for any alleged misrepresentation related to the company's net worth and the status of the SBA loan. The Agency also failed to establish that the statements made by Plaintiffs, even if false, were intentionally false.

42. The Agency also failed to consider the company's present business status, current viability, and current compliance with the law and FHA guidance. Vinson Mortgage has consistently held sufficient capital to prevent any risk to customers or HUD. In fact, no harm—financial or otherwise—ever came to HUD or to any of Vinson Mortgage's customers in connection with a net-worth issue.

43. The debarment will have an immediate and severe impact on Plaintiffs and on Vinson Mortgage's business. The Agency's representation that the Debarment Order has taken immediate effect, despite this Court's stay order in the related case, puts Plaintiffs and Vinson Mortgage in the same position as if the Court had never entered the stay order. Thus,

9

contemporaneously with this Complaint, Plaintiffs have filed an emergency motion to stay the debarments pending this judicial review.

## CLAIMS FOR RELIEF

## COUNT ONE: EMERGENCY STAY PENDING JUDICIAL REVIEW

44. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint, as though fully set forth below.

45. Absent a stay, Plaintiffs face irreparable harm.  Namely, the Debarment Order purports to forcibly divest them of the company they have developed for years before this Court has an opportunity to review the merits of the administrative action, which was imposed without the protection of a hearing to resolve factual disputes.  Plaintiffs will suffer immediate and irreparable harm to their reputation, as their debarments (and the allegations related to them) will be on HUD's public list, without any qualification that the debarments are under review.  Further, the absence of a stay will threaten Plaintiffs' business, Vinson Mortgage, which will be faced with daily fines and penalties for each day of alleged violation; even were it to seek to replace Plaintiffs as owners and principals, the process would take months, in which time the company would have to undergo significant structural transformations, if it were not outright put out of business.  In the meantime, the company will immediately incur substantial reputational damage and loss of goodwill.  This, in turn, will ultimately harm the communities served by Vinson Mortgage, including FHA homeowners.

46. These harms outweigh any harm the Agency would face as a result of a stay pending judicial review.  Indeed, the Agency has already consented to a stay of the Withdrawal Action while the related case is pending in this Court.

47. Plaintiffs have a likelihood of success on the merits.  This action raises important questions regarding the Due Process clause's requirement of an opportunity to be heard, and it also

provides an opportunity to correct the Agency's departure from GAAP in imposing draconian penalties on the good faith conduct of Plaintiffs and their company.

48. The public interest supports staying the Debarment Order pending judicial review to avoid an injustice in the form of Plaintiffs being forcibly deprived of the business they have owned and operated for years, as well as potential harm to the company itself, its employees, and the communities it serves.

49. Plaintiffs therefore request that this Court stay the effect of the Debarment Order during the pendency of this action.

### COUNT TWO: ARBITRARY AND CAPRICIOUS AGENCY ACTION

50. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint, as though fully set forth below.

51. The Agency's March 13, 2018 Debarment Order constituted final agency action. The Agency represented, in the Debarment Order itself and in the March 23, 2018 email, that the Debarment Order took immediate effect. Further, after the Debarment Order issued, the Agency provided no additional procedure for Plaintiffs to follow to challenge the order on the merits. Under the Agency's regulations, debarment orders are explicitly ineligible for secretarial review. *See* 24 C.F.R. §§ 26.25-26.26(a).

52. HUD's decision to debar Plaintiffs for three years was arbitrary and capricious and an abuse of discretion. Specifically, the Agency's imposition of its harshest penalty on the basis of a one-off, GAAP-supported accounting issue must be rejected as irrational and unsupported by the evidence and the considerations that were before HUD. Plaintiffs presented arguments to HUD that Plaintiffs' actions were in good faith and accorded with GAAP, including ASC 405. Further, there was never any injury to Vinson Mortgage's customers or to HUD that resulted from the underlying issues at the center of HUD's dispute with Plaintiffs. The Agency adduced no evidence

11

that the statements made, even if false, were intentionally false. Because HUD's decision is unsupported by the evidence, it is in violation of the APA.

53. Finally, the fact that the Agency never provided Plaintiffs with an evidentiary hearing in this case, despite both sides representing that there existed a material factual dispute, means that the Debarment Order was issued in violation of the APA. The regulations governing HUD debarment actions require a hearing in order to adjudicate genuine factual disputes. Such hearings require, by regulation, the creation of a record and other procedural protections. The hearing held in this case failed to comply with these procedural requirements, notwithstanding that the Debarment Order purports to resolve issues of fact. Therefore, the hearing that was held violates the regulations for debarment orders and must be vacated under the APA.

54. Plaintiffs therefore request that the Court vacate the three-year debarments imposed on Plaintiffs by the Agency.

## COUNT THREE: DUE PROCESS VIOLATIONS

55. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this Complaint, as though fully set forth below.

56. Plaintiffs have a property interest in their company, Vinson Mortgage, and in conducting business with the federal government through the FHA and other programs.

57. The procedure HUD afforded to Plaintiffs created a high risk of erroneous deprivation of Plaintiffs' property interests. Specifically, HUD did not provide Plaintiffs with an adequate opportunity to be heard. This is for two reasons. First, Plaintiffs were denied the opportunity to put on evidence at a hearing, despite having requested an evidentiary hearing in writing and at the informal hearing, in violation of Plaintiffs' constitutional rights and Agency regulations. Second, Plaintiffs were denied the opportunity to be heard by a neutral arbiter who would be making the decision on the debarment action. Because there was no hearing before Mr.

12

Clemmensen, who issued the Debarment Order, and no record of the informal hearing for Mr. Clemmensen to review, the informal hearing did not afford Plaintiffs with any meaningful opportunity to be heard. Moreover, Mr. Clemmensen serves as the chief enforcement officer for the Agency, which means he was directly supervising the underlying withdrawal prosecution. His decision to interpose himself as the adjudicator of the debarment action violates due process because it means he served as both prosecutor and judge to the same issue.

58. The Agency's opposition to Plaintiffs' request for an evidentiary hearing recognized that the "fundamental" issue was whether Plaintiffs' representations were true—a purely factual matter. *Cf.* 2 C.F.R. § 180.830 (providing for opportunity for additional proceedings for material, factual disputes). Despite this, the Agency never granted Plaintiffs' repeated requests for an evidentiary hearing.

59. The only hearing that was held was the informal, telephonic hearing before Mr. Coward on October 10, 2017. That informal hearing was off the record; no transcript or other recording memorialized it. The Debarment Order was issued by Mr. Clemmensen, who did not participate in the informal, telephonic hearing or otherwise review any record of it, as no record was created. Thus, Plaintiffs were denied the opportunity to be heard by a neutral arbitrator who would ultimately decide the outcome of the debarment action.

60. Had HUD followed its own regulations and provided Plaintiffs with a constitutional baseline of due process, the risk of constitutional harm to Plaintiff could have been avoided.

61. Plaintiffs therefore request that the Court vacate the three-year debarments imposed on Plaintiffs by the Agency.

**PRAYER FOR RELIEF**

62. WHEREFORE, Plaintiff respectfully requests that this Court:

13

   (a) Stay HUD's debarment action under 5 U.S.C. § 705 pending conclusion of this Court's judicial review proceedings;

   (b) Declare that HUD's administrative action debarring Plaintiffs for three years is invalid;

   (c) Set aside HUD's administrative action debarring Plaintiffs for three years;

   (d) Award Plaintiffs their attorneys' fees and expenses incurred in this action pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d); and

   (e) Grant such other relief as the Court deems just and proper.

Dated: April 18, 2018       Respectfully submitted,

            BRYAN CAVE LLP

            By: /s/ Barbara A. Smith
            K. Lee Marshall (MO 48653)
            klmarshall@bclplaw.com
            Eric Martin (MO 47558)
            eric.martin@ bclplaw.com
            Barbara A. Smith (MO 66237)
            barbara.smith@ bclplaw.com
            Steven J. Alagna (MO 68980)
            steven.alagna@ bclplaw.com
            BRYAN CAVE LEIGHTON PAISNER LLP
            211 North Broadway, Suite 3600
            St. Louis, MO 63102
            Telephone: (314) 259-2000
            Facsimile: (314) 259-2020

            Attorneys for Plaintiffs.

## **CERTIFICATE OF SERVICE**

   I hereby certify that a copy of the foregoing was served via the Court's electronic filing system upon all parties of record and by depositing a copy of the foregoing in the U.S. mail this <u>18th</u> day of <u>April</u> for certified delivery upon:

Associate of General Counsel for Litigation
Office of Litigation – Room 10258
U.S. Department of Housing and Urban Development
451 Seventh Street, S.W.
Washington, D.C. 20410


         /s/ Barbara A. Smith
         Barbara A. Smith